IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>      Plaintiff, )<br>)<br>vs. )<br>)<br>**PATRICK YELLOWHAIR**, )<br>)<br>      Defendant. ) | Cr. No. 19-00437 JB |

UNITED STATES' SENTENCING MEMORANDUM

The United States submits this sentencing memorandum respectfully requesting that the Court sentence the defendant, Patrick Yellowhair, to a term of imprisonment of 90 months, which is in the middle of his guideline imprisonment range. In support, the United States asserts the following:

BACKGROUND

On October 3, 2018, during a drunken argument, the defendant, Patrick Yellowhair, killed his brother, John Doe, by stabbing John Doe in the neck and in the shoulder. (PSR ¶¶ 10, 17.) This senseless killing was the culmination of an afternoon of drinking and squabbling. (PSR ¶¶ 10-15.)

When the day began, everything was calm. Defendant and his brother were hanging out in their family home with their cousins, D.L. and R.L, and their cousin's girlfriend, N.T. (PSR ¶ 11-13.) In the afternoon, a friend, B.M., arrived at the home with beer and liquor. (PSR ¶ 11.) Defendant and his brother, John Doe, began drinking. (*Id.*) From there, the situation quickly spiraled out of control. After they were buzzed, as was often the case, Defendant and John Doe

started fighting. (*Id.*) Defendant and John Doe began by cussing at each other and calling each other names. This escalated to scuffling, punching, and throwing each other on the floor. (*Id.*) Defendant's cousins told Defendant and John Doe to calm down, but Defendant and his brother kept fighting on and off during the afternoon. At some point, it got bad enough that someone in the house called the police. (*Id.*)

Before the police arrived, John Doe and a friend left the family home. (*Id.*) After John Doe was gone, things cooled down. People began going to sleep or watching movies. (*Id.*)

At approximately 11:00 or 11:30 p.m., after several hours had passed, John Doe and his friend returned home. (*Id.*) John Doe appeared to be in an upbeat mood. He called out: "Let's take shots" and invited Defendant and everyone to drink with them. (*Id.*) Defendant ignored his brother's requests, but John Doe kept bugging Defendant. (*Id.*) That was when Defendant snapped. According to others in the house, Defendant started cussing at John Doe and telling John Doe to go home. (PSR ¶¶ 11, 15.) Then, sometime after or around midnight, on October 3, 2018, Defendant stabbed John Doe twice, once in the neck and once in the left shoulder. (PSR ¶¶ 10-17; Doc. 21 ¶ 7.) As a result of these wounds, John Doe quickly died. (PSR ¶ 10.) Defendant fled the house and hid in the bushes, where he was later apprehended by the police. (PSR ¶¶ 13-14.)

On February 15, 2019, Defendant pleaded guilty to an information charging him with Voluntary Manslaughter, in violation of 18 U.S.C. § 1153 and 1112. (Docs. 21-22.) In entering the plea agreement, Defendant admitted that he acted recklessly with extreme disregard for human life when he stabbed his brother. (Doc. 21 ¶ 7.)

THE SENTENCING GUIDELINES CALCULATION

On May 16, 2019, United States probation issued a Presentence Report ("PSR") calculating Defendant's guideline range as 78 to 97 months of imprisonment. (PSR ¶ 80.) The government agrees with the guideline calculations contained in the PSR.

ARGUMENT

As this Court is well-aware, the United States Sentencing Guidelines are advisory. *See United States v. Booker*, 543 U.S. 220, 234 (2005). In determining a sentence, the district court must consider both the Guidelines and the factors set forth in 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 51 (2007). Under this framework, an appropriate sentence is one that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence to criminal conduct, protects the public from further crimes of the defendant, and provides the defendant with needed educational or vocational training, medical care or other correctional treatment. 18 U.S.C. § 3553(a)(2)(A-D); *Booker*, 543 U.S. at 261-62. Specific factors relevant to the sentencing analysis include the nature and circumstances of the offense and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(1-7). Furthermore, while no presumption of reasonableness attaches to a Guideline sentence, *United States v. Rita*, 551 U.S. 338, 350 (2007), the Court still must consider the sentencing Guideline range, 18 U.S.C. § 3553(a)(4). In particular, the court may conclude that a Guideline sentence is a "rough approximation" of a sentence that would achieve the objectives of 18 U.S.C. § 3553(a). *Rita*, 551 U.S. at 350. For the reasons set forth below, a 90-month guideline sentence is a proper sentence in this case.

**1.  Nature and Circumstances of the Offense**

Defendant pled guilty to killing his brother.  In determining Defendant's sentence, the Court must consider the "nature and circumstances" of this offense. 18 U.S.C. § 3553(a)(1). One purpose of this inquiry is distinguishing among defendants who commit a particular offense or type of offense. *See United States v. Cerno*, 529 F.3d 926, 939 (10th Cir. 2008) (Section 3553(a) directs courts to consider "whether the offense committed was more or less heinous than offenses committed by other defendants convicted under the same statute."). Generally, the more egregious the offense the more severe punishment the Court should impose. *See* 18 U.S.C. § 3553(a)(2)(A) (the sentence imposed should reflect the seriousness of the offense.).

Defendant's conduct in this case was extreme.  Defendant stabbed his brother to death because Defendant was angry and upset about his brother drunkenly and loudly insisting that Defendant resume drinking with him.  This is not the type of provocation that a reasonable person would respond to with deadly violence.

Even in the context of Defendant and his brother's relationship, Defendant's actions were excessive.  It is undisputed that Defendant and his brother had a history of drunkenly tussling and fighting.  While they had been fighting throughout the day of the stabbing, these altercations concluded some hours before the offense.  During that period, both John Doe and Defendant had time to cool off.  When John Doe returned to the home, he was ready to be friends again.  He did not physically attack or seek to injure Defendant.  Rather, Defendant reinitiated the physical fight because of irritation.  Defendant also gravely escalated the situation by grabbing and using a knife to stab his brother.  The consequences of these decisions were lethal.  A sentence in the middle of the guideline range appropriately reflects these facts.

2. **History and Characteristics of the Defendant**

According to the PSR, the Defendant has prior substance abuse history with alcohol. Defendant admitted he was drinking at the time of the instant offense. (PSR ¶ 18.) Defendant's struggles with substance abuse, however, do not excuse his actions. *See* U.S.S.G. § 5H1.4 ("Drug or alcohol dependence or abuse ordinarily is not a reason for a downward departure.").

Defendant's criminal history indicates that he is danger to public when he drinks. Defendant has been convicted of driving while under the influence on four separate occasions. (PSR ¶¶ 35-37 and 40.) On top of these conviction, Defendant has been charged, but not convicted, of drinking and driving an alarming eight additional times. (PSR ¶¶ 47-48, 50-52, 54, 56-57.) Even more concerningly, Defendant has prior convictions for violent and aggressive conduct when intoxicated. In 2009, Defendant drunkenly swung at a police office, knocking the officer's glasses off the officer's face. (PSR ¶ 38.) As a result of this conduct, Defendant incurred a conviction for resisting, evading, and obstructing an officer. (*Id.*) Also in 2009, defendant was charged with battery after a pregnant family member reported that he hit her in the head with a frying pan while he was intoxicated. (PSR ¶ 53.) In 2013, Defendant once again refused to comply with police when he was questioned while intoxicated and was convicted of disorderly conduct. (PSR ¶ 39.) This history supports imposing a sentence above the bottom of the guideline range.

3. **The Need for the Sentence Imposed to Promote Respect for the Law, Provide Just Punishment, Adequate Deterrence and to Protect the Public from Further Crimes of the Defendant**

A sentence within Defendant's guideline imprisonment range considers the criminality of his conduct, promotes respect for the law, deters Defendant from committing further crimes and protects the public from further crimes of Defendant.

4.  **The Need to Avoid Unwarranted Sentencing Disparities Between Defendants Who Have Committed Similar Crimes**

Imposing a Guideline sentence is the best approach to preventing unwarranted sentencing disparities between similarly situated defendants. The Guidelines have set a range of 78 months to 97 months of imprisonment for a defendant who has a criminal history category of III and has committed the offense at issue. A sentence of 90 months is an appropriate sentence in this case.

## CONCLUSION

A 90-month sentence is "sufficient, but not greater than necessary to comply with the purposes [of sentencing]." 18 U.S.C. § 3553(a). WHEREFORE, the United States respectfully requests that this Court accept the plea agreement and sentence the Defendant to a term of imprisonment of 90 months followed by a term of supervised release of whatever length the Court deems appropriate.

Respectfully submitted,

FRED J. FEDERICI
Acting United States Attorney

*Electronically filed on April 19, 2021*
ALLISON C. JAROS
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico  87103
(505) 346-7274
(505) 346-7296 fax

I HEREBY CERTIFY that on the 19th day of April 2021, I filed the foregoing pleading electronically through the CM/ECF system, which caused counsel of record to be served by electronic means on this date.

/s/_____
Allison C. Jaros
Assistant U.S. Attorney